UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLINE BRYANT a/k/a WILLINE GRACIA
and MAX GRACIA, SR., as
Co-Personal Representatives of
the Estate of MAX GRACIA, JR., II,

Case No.  6:17-CV-1423-ORL-31-KRS

       Plaintiffs,

vs.

ORANGE COUNTY, FLORIDA,
ROBERT J. BUCK, III,
MARY ANNE EVANS,
KAREN CLAIRMONT,
ELSA GALLOZA-GONZALEZ
and LYNN MARIE HARTER,

       Defendants.
_____/

**DEFENDANT KAREN CLAIRMONT'S**
**REPLY TO PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, KAREN CLAIRMONT, by and through undersigned counsel and pursuant to the Court's Case Management Scheduling Order, hereby files her Reply to Plaintiffs' Consolidated Response to her Motion for Summary Judgment (Doc. 85) and states as follows:

Plaintiffs filed their Response to Karen Clairmont's Motion for Summary Judgment on March 11, 2019 (Doc. 100) (hereinafter "Response").  Plaintiffs contend that a dispute of material facts exists and offer in support of such contention the written report and affidavit of their retained correctional healthcare nurse expert, Lori E. Roscoe, DNP, APRN, ANP, CCHP-RN (Doc. 98, Exhibits A and B, respectively).  Plaintiffs do not cite any particular depositions, affidavits or declarations in the record that is in dispute or that justifies their opposition.

In their Response, Plaintiffs attach great significance to Karen Clairmont's presence when two correctional officers, Vargas and Garrett, acted on Nurse Practitioner Mary Anne Evans' order to have Mr. Gracia transferred from the Infirmary to General Population. (Doc. 100, p.14). During this encounter, Plaintiffs contend that Nurse Clairmont rendered "no medical assistance or evaluation whatsoever" even though she observed Mr. Gracia "lying on the floor groaning in a lethargic manner, appeared unresponsive to the Correctional Officers' commands" with heavily soiled, dried, bloody dressings. (Doc. 100, p.15). There is no record of Mr. Gracia lying on the floor lethargic and unresponsive. Plaintiffs then imputes to Nurse Clairmont a medical diagnosis of malingering, for which there is no record evidence of her doing, and argues that Nurse Clairmont adopted an adversarial attitude on the belief that Mr. Gracia was "faking or exaggerating his medical condition and inability to get up." Without citation to record evidence, Plaintiffs attempt to create a narrative that Nurse Clairmont "pursued an unfounded diagnosis of malingering in the presence of objective evidence of a serious medical need evidencing deliberate indifference." (Doc. 100, p.15).

## ARGUMENT

### 1. Defendant's Objections to Plaintiffs' Summary Judgment Evidence

The Court's Case Management and Scheduling Order states in pertinent part:

> The memorandum in opposition [to a motion for summary judgment] shall specify the material facts as to which the opposing party contends there exists a genuine issue for trial, and shall be accompanied by affidavit(s) and *other evidence in the form required by Fed. R. Civ. P. 56.* … Both the movant and the party opposing summary judgment shall provide pinpoint citations to the pages and lines *of the record* supporting each material fact. (emphasis added).

[Doc. 38 pg. 6]. Federal Rule of Civil Procedure 56(c) states in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by *citing to particular parts of materials in the record*, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Plaintiffs expert, Lorie E. Roscoe prepared a report in which she drafted a "case summary" based upon a review of certain documentation. [Doc. 98 pgs. 2-7]. Plaintiffs repeatedly cite throughout their Response to the Roscoe Report as though it were a properly formed evidentiary record. It is not. The case summary is no more than a second-hand account of the record prepared by Plaintiffs' retained expert which itself contains no proper citations to the record. Consequently, the Plaintiffs, by adopting her report in toto, have made a great many factual assertions throughout their Response that contain no citation to evidence in the record.[1] A number of these factual assertions are argumentative, some of which Ms. Clairmont has flatly denied. (*See e.g.*, Doc. 100 pg. 15 ("she advised that Gracia was 'faking or exaggerating his medical condition and inability to get up.'")).

This Court is not obligated to "consider the unsupported argument of counsel as evidence." *United States ex rel. Crenshaw v. Degayner*, 622 F. Supp. 2d 1258, 1269 (M.D. Fla. Jun 13, 2008) (citing *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990). "A district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment." *Degayner*, 622 F. Supp. 2d at 1269. "Instead, the court can rely upon the non-moving party to show such a dispute if one exists." *Id.* The Court should "not consider any factual arguments made by [any] party that are not supported with evidence and specific citations to the record." *Id.* Consequently, the Court should not base any finding of dispute of material fact concerning the care provided by Nurse Clairmont on Plaintiffs' written expert report.

---

[1]In addition to citations to the Roscoe Report in lieu of citation to the record, the Response makes numerous assertions of fact that have no citation of any kind.

### 2. The evidentiary record does not substantiate Plaintiffs allegations of deliberate indifference.

The record evidence before the Court does not support Plaintiffs' narrative. First, as a matter of law, registered nurses do not make medical diagnosis. *See* Florida Statute § 464.003(17) (defining "Practice of practical nursing"). Plaintiffs assert that the Defendants, including Nurse Clairmont, pursued a diagnosis of malingering despite objective evidence of a serious medical need. Nothing within the record before the Court indicates that Nurse Clairmont was operating under the misapprehension that Mr. Gracia was malingering. At deposition, concerning Nurse Clairmont's August 9, 2015 encounter with Mr. Gracia wherein she noted that Mr. Gracia slide his body onto the floor, Nurse Clairmont offered the following testimony:

> Q.   …let's talk about at this point. At this point, when he said, "I can't do it" and he slid himself onto the floor, did you think that he was faking it?
> A.   Did I think at that point he was faking it, or any point, no.
> Q.   Do you know why he was written up for not following orders?
> A.   Because he wasn't following orders.
> Q.   Whose orders was he not following?
> A.   You might have to ask correction officers.
> Q.   Was it your orders that he was not following?
> A.   I don't recall.
> Q.   Did you have any part of him being written up?
> A.   You'd have to ask the correction officer that question.

[Doc. 85-1, pgs. 81:25 – 82:14].

No record evidence exists to suggest that Nurse Clairmont had pursued a "diagnosis" of malingering and then pursued a course of deliberate indifference, by directing correctional staff to issue a disciplinary referral or otherwise.

To diminish the care provided by Nurse Clairmont on August 9, Plaintiffs contend that Nurse Clairmont "rendered no medical assistance or evaluation whatsoever even though she noted that his dressings were heavily soiled with dried bloody drainage on August 9." (Doc. 100,

4

pg. 15) The undisputed record of her encounter is recorded in the electronic progress note of

Nurse Clairmont wherein she noted:

> The patient is observed twisting himself and moaning loudly on bed during MedPass when asked by staff to sit up for his pm meds.  Patient cried, 'I can't do it' and proceeded to slide his body onto the floor near the foot of his bed.  Patient refused all assistance and refused all care from nursing staff.  Patient's dressing on his LL calf and upper left thigh are noted to be heavily soiled with dried bloody drainage upon assessment.  Will encourage patient to allow wound care.  Will continue to monitor.

[Doc. 85-7].

Contrary to Plaintiffs' narrative is the undisputed record fact that Nurse Clairmont

interceded on behalf of Mr. Gracia and had him retained in the infirmary, despite Nurse Evans'

order to have him transferred to general population housing.  Nurse Clairmont chose to hold Mr.

Gracia in the Infirmary and have him transferred from Cell 15 to Cell 19 which is monitored by

correctional health staff via camera.  At deposition, Nurse Clairmont testified concerning this

transfer:

> Q.   So my next question is, why was Mr. Gracia moved from cell 15, that's in the infirmary, to cell 19, that's in the infirmary?
> A.   Cell 19 is a camera'd cell.  Apparently to keep a closer eye on him.
> Q.   So whose decision was it then to move him to cell 19?
> A.   It was mine.

[Doc. 85-1, pgs. 85:24 – 86:6].

Further there no record basis for Plaintiffs' contention that Nurse Clairmont did not

monitor Mr. Gracia following the transfer to Cell 19.  At deposition, Nurse Clairmont testified as

follows:

> Q.   After Mr. Gracia was transferred to cell 19, did you physically go and look at him at all?
> A.   No, but I remember looking at the monitor that monitored the camera.
> Q.   What were you looking for on that monitor?

> A.   I mean, change, physical change.   You know, if he was up, moving.

[Doc. 85-1, pg. 88:4-10].

Plaintiffs' Response in opposition to Nurse Clairmont's Motion does not offer any evidence to create a dispute of material fact concerning her care.   Based on the argument and legal authority cited in her Motion, Nurse Clairmont requests the Court to grant final summary judgment in her favor.

### 3.   Plaintiff has failed to cite to pre-existing law furnishing notice that her conduct violated a clearly established constitutional right.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1983) (citations omitted).   The unlawfulness of the action must be sufficiently "apparent" in the light of pre-existing law to furnish the official with notice. *McMillian v. Johnson*, 88 F.3d 1554, 1565 (11th Cir. 1996).   ([F]or the law to be clearly established, a court need not have found the very action in question unlawful; what is essential is that the action's unlawfulness be apparent in light of pre-existing law."

Assuming for the sake of argument that Nurse Clairmont had misapprehended Mr. Gracia's presentation as malingering, Plaintiffs have not come forward with any clearly established law furnishing Nurse Clairmont with notice that her conduct was constitutionally actionable.   Other courts outside the Eleventh Circuit that have addressed the issue of malingering in a correctional setting and found that allegations that a healthcare provider ignored evidence of a serious medical condition on the belief that a prisoner was malingering, in and of itself, is insufficient to show deliberate indifference when the malingering diagnosis is later proven to be unfounded.   *See Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998) (finding

malingerer diagnosis "not convincing evidence of deliberate indifference" where prisoner's symptoms were due to cancerous pituitary tumor); *Wood v. City of Lancaster*, No. 06-3033, 2009 U.S. Dist. LEXIS 2123 (E.D. Pa. Jan. 13, 209) (placing an inmate on "manipulation status" on the mistaken belief that the prisoner who was malingering when such diagnosis was not consistent with overall clinical presentations, did not amount to deliberate indifference on behalf of the physician.)

### CONCLUSION

Plaintiffs seek to avoid summary judgment by pursuing a narrative that is not substantiated by the record, or any reasonable inference that may be made therefrom. The record doe not support the allegation that Nurse Clairmont diagnosed Mr. Gracia as a malingerer then became indifferent towards him as he succumbed to undiagnosed sepsis. The undisputed record shows that Nurse Clairmont provided care to Mr. Gracia up to the point that he refused her assistance and care from other nursing staff. She then interceded in her superior's order to transfer Mr. Gracia from the infirmary to general population and had him moved to a monitored cell inside the infirmary. There is no evidence to contradict her testimony that she continued to monitor, although remotely via camera. While Nurse Clairmont's care may be criticized for failing to closely examine and assess Mr. Gracia's clinical presentation, the record does not evidence deliberate indifference to a serious medical condition known to her.

Defendant, KAREN CLAIRMONT, in her Motion has shown that she is entitled to final summary judgment and respectfully requests that her Motion be granted.

### CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system which will send a notice of electronic filing to all counsel

of record to date.

> s/ Brian F. Moes                        .
> Walter A. Ketcham, Jr., Esquire
> Florida Bar No.  156630
> Brian F. Moes, Esquire
> Florida Bar No.  39403
> Grower, Ketcham, Eide, Telan & Meltz, P.A.
> PO Box 538065
> Orlando, FL  32853-8065
> Phone: (407) 423-9545
> Fax:     (407) 425-7104
> Primary E-mail:waketcham@growerketcham.com
> 1st Secondary E-mail:  enotice@growerketcham.com
> 2nd Secondary E-mail:  lsase@growerketcham.com
> Counsel for Defendant, Karen Clairmont

13169/2503

8